THE COLONIAL WOOLEN COMPANY

*v.*

THE TRENTON WATER POWER COMPANY.

[Filed October 3d, 1903.]

1. In a suit for an injunction to restrain defendant from discharging water into a tailrace, running over complainant's land, it appeared that the questions mooted were purely legal ones, and that an action at law was pending in which they could be determined, the injunction suit was retained until the questions at law were determined.

Colonial Woolen Co. *v.* Trenton Water Power Co.

2. In the meantime an injunction was granted restraining the discharge of the water to its full capacity, and an amendment to defendant's answer was allowed, setting up the pendency of the action at law.

---

*Mr. John A. Montgomery,* for the complainant.

*Mr. James Buchanan,* for the defendant.

REED, V. C.

The complainant is the owner of a woolen mill on the northeast corner of Union and Cass streets, in Trenton. The original mill, known as the Saxony mill, seems to have been a brick structure, built some sixty years ago. Frame buildings have also been used in connection with the brick structure for a period almost as long. Alongside of the easterly side of the original mill ran a stream of water, which had its origin up near Warren street, and ran near Federal street, by the mill, to the Delaware river. About the time the mill was built the canal of the water power company, now owned by the defendant, was extended down to the westerly side of the mill. The machinery of the mill was run by a water-wheel, fed by water, led in upon it from this canal through a raceway leading from the canal into the mill. The water, after use upon the wheel, was discharged into the stream already mentioned, and passed through it into the Delaware river. The unused water of the canal was for many years discharged through a raceway which supplied water to the water-wheel of the New Jersey Iron and Steel Company. When the New Jersey Iron and Steel Company sold out to the American Bridge Company the raceway was closed, and since then the canal of the water power has been filled up south of the defendant's mill. The canal now terminates just south of the raceway that leads to defendant's mill, with no outflow at its southern end. About three years ago a thirty-six inch pipe was laid above the mill leading from the canal of the defendant into this stream, or the bed of what had been this stream. The purpose of laying this pipe was to draw off the *debris,* which settled in the canal when the water was not discharged through the race-

way of the complainant, which *debris* would have otherwise settled to the bottom of the canal, lessening its depth, and in consequence its capacity as a reservoir. The complainant had complained that the quantity of water was insufficient to run its wheel.

Last April, a disagreement having arisen between the parties respecting the rate to be paid for water furnished to complainant, the gates of the raceway were closed and the complainant was deprived of its water-power. The only outlet from this branch of the canal was thereafter the thirty-six inch pipe. This pipe was at times opened to its entire capacity, and, by reason of the volume of water so sent down the bed of the stream, which had become a tailrace, the complainant insisted that the foundations of the frame portion of their mill were washed out, and at times its dyeing tubs were inundated, to the injury of goods in them, and to their damage in arresting the work of the mill.

It is to restrain the venting of this water through the thirty-six inch pipe into this stream or tailrace that this bill is filed.

The defendant asserts a right to vent its waters into this stream or tailrace, which runs through the complainant's property.

It appears that in 1838 George M. and Benjamin Coates, who owned a tract of land adjoining the raceway of the water power company, then the Trenton Delaware Falls Company, had a map of the land plotted. This map was entitled "Plan of mill sites and building lots on the raceway of the Trenton Delaware Falls Co., New Jersey." Upon it was delineated a tailrace, running from the reservoir at Federal street to Cass street. This tailrace, as plotted, ran through the property of the complainant, where the water now flows, and so far as can be ascertained, in the same course as the original stream already mentioned. On September 1st, 1840, George M. and Benjamin Coates sold lots 50 and 51, as plotted upon this map, to Andrew Allinson. In his deed there is a reference to the map, although there is no direct mention of the tailrace plotted thereon. Upon these two lots Allinson built the Saxony mills, now owned by the complainant.

On August 27th, 1845, the Coates entered into an agreement with the water power company, by which the latter were permitted to waste and discharge water from its canal into this tailrace, and to "widen, deepen and improve the same." This agreement was never recorded, and was made, as is perceived, after the Coates had sold lots 50 and 51, now owned by the complainant. Afterwards other lots were sold by Coates, by reference to the plotting, some of which are now owned by the complainant. There is nothing to show that the complainant had notice of the rights of the defendant to vent its water through this tailrace other than the map itself, to which reference was made in the deeds, and the configuration of the ground itself. Defendant, however, insists that the delineation of the tailrace upon the map was notice to the complainant that there was a right of flowage through this tailrace, and that this tailrace was a conduit for the use of the waste-water from defendant's canal.

Defendant also claims that the deed for lots 50 and 51 passed no property rights in the tailrace itself, and therefore the complainant has no footing to complain of the flowage of water through it.

These are purely legal questions, and, in my judgment, should be settled in an action at law. An action is now pending in which these questions can be determined. This suit will be retained until these questions are in this manner settled. In the meantime I am of the opinion that there should be an injunction against the use of the thirty-six inch pipe to its full capacity. From the testimony and from personal inspection of the tailrace since the hearing, through which was flowing a stream of water vented by the partly-open pipe, I am convinced that damage is likely to accrue to complainant's property if water is discharged in quantities equal to the full capacity of the pipe.

I should think that not more than one-third of its capacity was in use when I saw it, and that seemed to be sufficient for all present needs of the water power.

I will advise an injunction against discharging a larger quantity than this until the determination of the right to discharge it all shall be adjudicated at law.

I will allow the amendment to the answer setting up the pendency of the action at law, upon payment of costs of the motion and the costs of filing a replication to the amended answer.